**UNITED STATES of America,
Appellee,**

v.

**Samuel O. WHITE, Defendant,**

**Luis Noel Cruz, aka Danny Cruz,
Defendant–Appellant.**

**Docket No. 00–1113.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 2, 2001.

Decided Feb. 13, 2001.

Corrected Feb. 14, 2001.

Darrell B. Fields, Legal Aid Society, Federal Defender Division Appeals Bureau, New York, NY, for Appellant.

Thomas S. Duszkiewicz, Assistant United States Attorney, for Denise E. O'Donnell, United States Attorney for the Western District of New York, Buffalo, New York, for Appellee.

Before: SACK, SOTOMAYOR, KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge:

Luis Noel Cruz appeals from a final judgment of conviction entered on January 27, 2000, in the United States District Court for the Western District of New York (Arcara, *Judge*). He argues that: (1) his convictions for drug distribution under 21 U.S.C. § 841(a) must be dismissed as lesser included offenses of his convictions for drug distribution within 1000 feet of a school under 21 U.S.C. § 860; (2) the district court misunderstood its authority to depart from a sentence of 240 years' imprisonment; (3) the district court's sentencing Mr. Cruz to 240 years based on its own findings of drug quantity by a preponderance of the evidence violated his right to due process under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (4) Mr. Cruz was denied a fair trial due to the admission of testimony suggesting that he had taken part in other crimes; and (5) the district court improperly enhanced his offense level based on his attempted obstruction of justice. Mr. Cruz prevails on his first two arguments, and we therefore vacate the convictions under 21 U.S.C. § 841(a) and remand the case to the district court for resentencing, which shall include a determination of whether a downward departure would be appropriate. We find, however, that Mr. Cruz's remaining arguments are without merit, and so affirm the district court as to those issues.

## I. Background

Following a jury trial, Mr. Cruz was convicted of one count of conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 [1]; two counts of possession with intent to distribute and distribution of cocaine base and cocaine, respectively, in violation of 21 U.S.C. § 841(a)(1) [2]; two counts of possession with intent to distribute cocaine base and cocaine, respectively, within 1000 feet of a public school, in violation of 21 U.S.C. § 860(a) [3] (the "schoolyard counts"); and one count of use of a person under 18 to assist in the distribution of cocaine base and cocaine, in violation of 21 U.S.C. §§ 861(a)(1) [4] and 861(a)(2) [5].

The evidence presented to the jury showed that Mr. Cruz had engaged in three separate drug transactions on August 19, August 21, and September 9, 1998. The parties stipulated to the quantity and type of drugs recovered in each transac-

---

1. "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

2. "[I]t shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).

3. "Any person who violates section 841(a)(1) ... of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as provided in subsection (b) of this section)

subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense." 21 U.S.C. § 860(a).

4. "It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally ... employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to violate any provision of this subchapter or subchapter II of this chapter." 21 U.S.C. § 861(a)(1).

5. "It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally ... employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to assist in avoiding detection or apprehension for any offense of this subchapter or subchapter II of this chapter by any Federal, State, or local law enforcement official." 21 U.S.C. § 861(a)(2).

tion; together, the sales involved a total of 23.7 grams of cocaine base (or "crack" cocaine) and 13.51 grams of cocaine. The sale of this quantity of drugs would normally result in a base offense level of 28. *See* United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(6).

However, the United States Probation Office, in its presentence report, recommended that the district court use a base offense level of 34 in calculating Mr. Cruz's sentence, based on "relevant conduct," *see id.* § 1B1.3, and also recommended several enhancements, which would result in an adjusted offense level of 43. Regarding "relevant conduct," the Probation Office stated that the confidential informant who was involved in two of the three drug sales charged in the indictment, Edwin Williams, would testify that he purchased an "eight-ball" (or approximately 3.6 grams) of cocaine base from Mr. Cruz every day over a period of two years. Taking a "conservative estimate" of 100 sales over that period of time, the Probation Office estimated that during this period, Mr. Cruz sold 350 grams of cocaine base to Mr. Williams. The Probation Office also included 56.7 grams of cocaine base that Mr. Cruz allegedly offered to sell the undercover officer, Timothy Taylor, on September 9, 1998. The Probation Office deemed the 13 grams of powder cocaine sold by Mr. Cruz on August 21, 1998 to be inconsequential, and so did not include that amount in its calculation of drug quantity. Nor did it apparently include the 3.47 grams of cocaine base Mr. Cruz sold on August 19, 1998. The Probation Office calculated the total quantity of drugs to be 406.7 grams of cocaine base, the distribution of which constitutes a base offense level of 34.

Both the government and the defendant submitted objections to the Probation Office's presentence report, and, on June 5, 1999, the district court held an evidentiary hearing to help determine the quantity of drugs that should be taken into account in calculating Mr. Cruz's sentence. The court heard the testimony of three witnesses, Edwin Williams (the confidential informant), Carol Belcer (Williams' long-time girlfriend), and Rosa Santiago, Mr. Cruz's girlfriend at the time of his arrest. Following the hearing, the Probation Office "revised its calculations to 2,449.71 grams of cocaine base." The district court noted that "Williams' testimony was not altogether clear or consistent regarding the dates when he dealt with defendant or amounts involved in these transactions." Nonetheless, the court, in a Decision and Order dated September 16, 1999, found that Williams' and Belcer's testimony was credible enough to allow the court to determine based on a preponderance of the evidence that Mr. Cruz had sold a quarter ounce of cocaine base to Mr. Williams every day for a period of six months in 1997, and that he sold varying amounts to Mr. Williams two or three times a week from April to September of 1998. Based on these findings, the court estimated that Mr. Cruz sold 1062 grams of cocaine base in 1997, and 141.6 grams in 1998. It discounted evidence of other sales as insufficient to meet the evidentiary standard, and declined to resolve whether the 56.7 grams of cocaine base Mr. Cruz allegedly offered to sell Officer Taylor could be used in determining the total drug quantity, as that additional amount would have no effect on the defendant's sentence in any event. The court thus found that the defendant had sold 1203.6 grams, or 1.2 kilograms of cocaine base, and that his base offense level was therefore 36. Because the offense was committed near a school, the court added one level under section 2D1.2(a)(2), for a total base offense level of 37. It then applied the following enhancements: two levels for obstruction of justice under section 3C1.1 of the Sentencing Guidelines (based on Mr. Cruz's attempt to get his then-girlfriend, Ms. Santiago, to claim that the drugs sold on September 9, 1998 were hers); two levels for possession of a firearm under section 2D1.1(b)(1); and two levels for the use of a minor in committing the offense under section 3B1.4

(for his use of Ms. Santiago, then a minor, to hide the drugs involved in the September 9, 1998 deal). Thus, the court calculated Mr. Cruz's offense level at 43, which carries a sentence of life imprisonment under the Sentencing Guidelines. *See* U.S.S.G. Ch. 5, pt. A

Because a sentence of life imprisonment exceeds the statutory maximum sentence for any one of the crimes of which Mr. Cruz was convicted, the district court applied section 5G1.2(d) of the Sentencing Guidelines, which provides:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d). The court therefore sentenced Mr. Cruz to the maximum sentence on each count,[6] and ran the sentences consecutively, to achieve a sentence equivalent to life imprisonment: 240 years. In so doing, the court stated that "there's no leeway for the Court, based on the findings of the Court."

## II. Discussion

### A. The Drug Distribution Counts

■ On double jeopardy grounds, Mr. Cruz asks that we vacate his convictions on counts two and three of the indictment, which charge him with drug distribution in violation of 21 U.S.C. § 841(a), arguing that his conviction on those counts is duplicative of his convictions on the schoolyard counts in violation of 21 U.S.C. § 860(a). The Government concedes that the § 841(a) counts are lesser included offenses of the schoolyard counts. We

would typically review this double jeopardy argument, which is a question of law, de novo. See *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir.1999). However, because it does not appear that this argument was made before the district court, we review for plain error. See Fed. R.Crim.P. 52(b); *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 466–67, 117 S.Ct. 1544 (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (citations and internal quotation marks omitted) (alteration in original).

■ In determining whether two counts are duplicative and thus violate a defendant's rights under the Double Jeopardy Clause of the Fifth Amendment, we ask whether each count contains an element not contained in the other. *See Chacko*, 169 F.3d at 146 (citing *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)). If so, the offenses "are not the same offense for purposes of double jeopardy, and they can both be prosecuted." *Chacko*, 169 F.3d at 146. If, however, either offense does not contain an element not contained in the other, the offenses are considered the same offense for double jeopardy purposes, and a defendant cannot be convicted of both. Here, counts two and four both charge the defendant with the knowing and intentional possession with intent to distribute and with distribution of cocaine

---

**6.** Mr. Cruz was sentenced to forty years on count 1 (conspiracy), twenty years for each of counts 2 and 3 (distribution); forty years each on counts 4 and 5 (the schoolyard counts); and eighty years on count 6 (use of a minor).

base on August 19, 1998. The only difference between the two counts is that count four, the schoolyard count, contains the additional element that a statement that the defendant committed the acts alleged "within one thousand feet of . . . a public school." Similarly, counts three and five both charge the defendant with the knowing and intentional possession with intent to distribute and with distribution of cocaine on August 21, 1998, with count five containing the additional element that the possession and distribution occurred within one thousand feet of a school. Thus, while counts four and five each contain an element not contained in counts two and three, the reverse is not true. No element of possession and distribution of cocaine base and cocaine under 21 U.S.C. § 841(a) is not also an element of distribution within one thousand feet of a school under 21 U.S.C. § 860. *See, e.g., United States v. Kakatin*, 214 F.3d 1049, 1051 (9th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 262, 148 L.Ed.2d 190 (2000) (finding that 21 U.S.C. § 841(a) is a lesser included offense of 21 U.S.C. § 860); *United States v. Freyre–Lazaro*, 3 F.3d 1496, 1507 (11th Cir.1993), *cert. denied sub nom. Llerena–Acosta v. United States*, 511 U.S. 1011, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994) (same). Hence, Mr. Cruz cannot be convicted under both 21 U.S.C. § 841(a) and 21 U.S.C. § 860 for the same transactions.

Although we have never explicitly stated that § 841(a) and § 860 constitute the same offense for double jeopardy purposes, the "elements" test cited above dates back to the Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), its application is routine, and the matter before us yields but one conclusion. We now join our sister circuits who, in addressing this issue, have uniformly held that § 841(a) is a lesser included offense of a violation of § 860. *See Kakatin*, 214 F.3d at 1051; *Freyre–Lazaro*, 3 F.3d at 1507; *United States v. Scott*, 987 F.2d 261, 266 (5th Cir.1993). In the instant case, the overlap between the distribution counts and the schoolyard counts is clear on the face of the indictment. We therefore find that the error here was "plain." It certainly also affects "substantial rights"— here, the right of the defendant under the Fifth Amendment not to be convicted twice for the same offense. Moreover, the error seriously affects the fairness of judicial proceedings. The judgment of conviction entered on counts two and three must thus be vacated, and the case remanded to the district court for entry of a new judgment and sentence based solely on the remaining counts of the indictment.

### B. *Apprendi v. New Jersey*

■ Mr. Cruz advances three distinct challenges to his sentence based on the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). As there was understandably no objection below (the proceedings having occurred before the Supreme Court's pronouncement), we review for plain error. See Fed.R.Crim.P. 52(b); *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63. The Court therefore held that a statutory scheme that allowed a sentencing court to increase the maximum punishment for possession of a firearm from ten to twenty years based on its own determination by a preponderance of the evidence that the defendant had "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity" violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 2351, 2362–63 (citation omitted). Rejecting a formalistic distinction between "elements" of the offense and "sentencing factors," the Court ruled that it was impermissible to rely on a fact not found by

the jury (other than a prior conviction) to impose a sentence above a statutory maximum. *Id.* at 2365.

■ Mr. Cruz's first argument is based on the penalty provisions contained in sections 841 and 846 of Title 21 of the United States Code. Section 841(a) defines the crime of distribution of a controlled substance, and section 841(b) sets forth different penalties for violations of section 841(a) depending on the quantity and type of drugs involved. See 21 U.S.C. §§ 841, 846 (quoted at notes 1 and 2, *supra*, and note 7, *infra*). Section 846 provides that the penalty for conspiracy is the same as the penalty for the crime that was the object of the conspiracy. *See* 21 U.S.C. § 846. Mr. Cruz argues that because the jury in this case was not instructed to determine the quantity of drugs involved, the maximum sentence for counts one, two and three, which allege violations of sections 841 and 846, should be governed by 841(b)(1)(C), which sets forth the penalty for selling an indeterminate amount of drugs. Section 841(b)(1)(C) provides a maximum sentence of 20 years imprisonment. *See* 21 U.S.C. § 841(b)(1)(C).[7] The district court applied instead section 841(b)(1)(B), which provides a maximum penalty of 40 years imprisonment for distribution of 500 grams or more of cocaine or 5 grams or more of cocaine base.[8]

In the case at hand, we need not consider whether drug quantity must be found by a jury in order to allow a court to sentence a defendant under any provision other than 841(b)(1)(C).[9] At trial, the parties entered stipulations regarding the type and quantity of drugs involved in the three charged transactions. Even if we consider the quantity of drugs involved in the August 19 and 21, 1998 transactions to be inconsequential, as did the district court, *see* Mem. Decision and Order dated December 17, 1999, at 6, the parties still stipulated that the September 9, 1998 transaction involved 20.249 grams of cocaine base, well over the 5 gram minimum required for sentencing under section 841(b)(1)(B). *See* Stipulation dated Nov. 17, 1998. Because Mr. Cruz entered into this stipulation, and because he did not object to the failure of the district court to include drug quantity as an element of the offense in its charge to the jury, any error was harmless.[10] See *United States v.*

---

**7.** 21 U.S.C. § 841(b)(1)(C) (2000) states in relevant part: "In the case of a controlled substance in schedule I or II, or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years . . ."

**8.** 21 U.S.C. § 841(b)(1)(B) declares in relevant part: "In the case of a violation of subsection (a) of this section involving . . . (ii) 500 grams or more of a mixture or substance containing a detectable amount of . . . (II) cocaine, its salts, optical and geometric isomers, and salts of isomers . . . (iii) 5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . ."

**9.** Prior to *Apprendi*, we held that "the quantity of drugs involved in a § 841 offense remains a sentencing factor to be determined by the district judge." *United States v. Thomas*, 204 F.3d 381, 384 (2000) (per curiam). However, the Supreme Court vacated*Thomas*,

along with similar opinions by our sister circuits, and remanded the case for reconsideration in light of *Apprendi*. *See Thomas v. United States*, —— U.S. ——, 121 S.Ct. 749, 148 L.Ed.2d 653 (2001); *see also, e.g., United States v. Hester*, 199 F.3d 1287, 1291–92 (11th Cir.), *vacated and remanded*, —— U.S. ——, 121 S.Ct. 336, 148 L.Ed.2d 270 (2000); *United States v. Jones*, 194 F.3d 1178, 1186 (10th Cir.1999), *vacated and remanded*, —— U.S. ——, 120 S.Ct. 2739, 147 L.Ed.2d 1002 (2000), *on remand* 235 F.3d 1231, 1236–37 (10th Cir.2000) (finding that failure to include drug quantity in an indictment for drug distribution under 21 U.S.C. 841(a) and to present the question to the jury violated *Apprendi*).

**10.** This determination also affects the maximum sentence on count 6, which alleges the use of a minor. 21 U.S.C. § 861 provides that the maximum penalty for use of a minor is twice the maximum sentence for the underlying conspiracy. Therefore, because the district court properly found that section 841(b)(1)(B) applied to Mr. Cruz, the court correctly determined that the maximum sentence on count 6 was eighty years.

*Champion*, 234 F.3d 106, 110 (2d Cir.2000) (per curiam); *United States v. Gonzalez*, 110 F.3d 936, 944–48 (2d Cir.1997).

■ Mr. Cruz's second argument is that the district court's use of section 5G1.2(d) of the Sentencing Guidelines to run his sentences consecutively rather than concurrently "effectively increased the penalty to which Mr. Cruz was subject to a life sentence, based solely on facts determined by a judge by a mere preponderance of the evidence." Appellant's Br. at 63. We think this contention is problematic. First, in Apprendi itself, the Supreme Court stated that the issue of consecutive sentences in the context of the case at hand was irrelevant to the Court's determination whether the sentencing court had impermissibly exceeded the statutory maximum for the particular count in question. *See Apprendi*, 120 S.Ct. at 2354. That is, the Supreme Court's concern in *Apprendi* was whether the sentencing court had, on the basis of facts found by the court and not the jury, exceeded the sentence for a particular count. Here, the district court did not exceed the maximum for any individual count. It cannot therefore be said that, as to any individual count, the court's findings resulted in the imposition of a greater punishment than was authorized by the jury's verdict. See *id.* at 2365; *see United States v. Moreno*, No. S3 94 Cr. 0165, 2000 WL 1843232, at *9–*10 (S.D.N.Y. Dec.14, 2000) (finding that *Apprendi* did not affect the application of section 5G1.2(d)).

■ Second, and perhaps more important, we are aware of no constitutionally cognizable right to concurrent, rather than consecutive, sentences. *Cf.* 18 U.S.C. § 3584 (providing that for sentences on multiple counts "the terms may run concurrently or consecutively"). "The presumption when Congress creates ... distinct offenses is that it intends to permit cumulative sentences," *Garrett v. United States*, 471 U.S. 773, 793, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), and such sentences are prohibited only if Congress did not intend separate punishments, *see United States v. Thomas*, 757 F.2d 1359, 1370–71 (2d Cir.), *cert. denied sub nom Fisher v. United States*, 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). "If the offenses charged are set forth in different statutes or in distinct sections of a statute, and each section unambiguously authorizes punishment for a violation of its terms, it is ordinarily to be inferred that Congress intended to authorize punishment under each provision." *Id.* at 1371 (quoting *United States v. Marrale*, 695 F.2d 658, 662 (2d Cir.1982)). In the case before us, the statutory provisions pursuant to which Mr. Cruz was convicted do not have the effect of barring consecutive sentences. *See Moreno*, 2000 WL 1843232, at *10. Moreover, with the exception of his argument with respect to the drug distribution counts discussed above brought pursuant to 21 U.S.C. § 841, Mr. Cruz makes no claim that would suggest that the imposition of consecutive sentences would be inappropriate in this particular case. For example, he does not argue that the government has improperly charged "a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed," *Chacko*, 169 F.3d at 145, *see generally* Part II A, supra, or that the prosecutors have improperly exercised their broad discretion in determining which crimes are appropriate to charge, *see United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *see also Moreno*, 2000 WL 1843232, at *10. Mr. Cruz had no legitimate expectation that his sentences on the multiple counts with which he was charged would run concurrently rather than consecutively (particularly given the "stacking" provision of section 5G1.2(d) itself). The district court's use of section 5G1.2(d) did not result in a sentence on any one count above the maximum available on that count (in light of the quantity stipulation), and so did not violate *Apprendi*. We therefore find no error in

the district court's application of section 5G1.2(d).

 Finally, Mr. Cruz argues that the provisions of the United States Sentencing Guidelines that allow courts to determine the appropriate sentencing range based not only on conduct charged in the indictment, but also on "relevant conduct" (as defined by section 1B1.3) violate *Apprendi* in that they allow sentencing factors to become "a tail which wags the dog of the substantive offense." *Apprendi*, 120 S.Ct. at 2365 (internal quotation marks and citations omitted). He contends that, as stated by the district court, "[a]lmost all" of the cocaine base considered as relevant conduct for sentencing purposes "is attributable to conduct occurring before the conspiracy charged in the indictment commenced," App. At 364 (Mem. Decision and Order dated Dec. 17, 1999, at 5), and that this violates *Apprendi* in that the district court used facts not before the jury to impose a sentence far higher than would have been warranted if only the amounts of drugs involved in the charged offenses had been considered.[11] He further argues that even if *Apprendi* does not require that these facts be tried to a jury, it mandates that the court determine them by a higher standard of proof than a preponderance of the evidence. We decline to read *Apprendi* so broadly. To read the opinion as the defendant does would be to eviscerate the Sentencing Guidelines, despite the Court's explicit statement that "[t]he Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held [in previous cases]." *Apprendi*, 120 S.Ct. at 2366 n. 21. Where, as here, factual determinations were used to sentence the defendant to a sentence within the maximum allowed by statute, *Apprendi* is not controlling, and such determinations can be made by the court without violating the defendant's right to due process. As for the standard of proof that must be used, we have recently confirmed, albeit without reference to *Apprendi*, that a preponderance of the evidence is the appropriate standard to be used in considering uncharged relevant conduct for sentencing purposes. *See United States v. Cordoba Murgas*, 233 F.3d 704, 708–09 (2d Cir. 2000). *Apprendi* does not alter this conclusion, as, again, we read it to apply only when a sentencing court's findings increase the penalty faced by the defendant above the statutory maximum for a given count, and not when they merely affect the length of a sentence within the statutory range. We therefore find no error in the district court's use of relevant conduct for sentencing purposes.

### C. The District Court's Authority to Depart

 Mr. Cruz suggests that the district court erred when it found that it had "no leeway"—which we understand to mean "no discretion"—to depart from the 240–year sentence indicated by the Guidelines. We agree. In *United States v. Rahman*, 189 F.3d 88, 154–57 (2d Cir. 1999), *cert. denied*, 528 U.S. 1094, 120 S.Ct. 830, 145 L.Ed.2d 698 (2000), we recognized

---

**11.** Mr. Cruz's argument was anticipated by Justice O'Connor, who, in her dissent in *Apprendi*, stated:

"The actual principle underlying the Court's decision may be that any fact (other than prior conviction) that has the effect, in real terms, of increasing the maximum punishment beyond an otherwise applicable range must be submitted to a jury and proved beyond a reasonable doubt. *See, e.g., ante*, at 2365 ("[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"). The principle thus would apply not only to schemes like New Jersey's, under which a factual determination exposes the defendant to a sentence beyond the prescribed statutory maximum, but also to all determinate-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (e.g., the federal Sentencing Guidelines). 120 S.Ct. at 2391.

that notwithstanding the apparent mandatory nature of section 5G1.2, a sentencing court may depart from the "stacking" provision of that section to impose concurrent sentences where the imposition of multiple stacked sentences based on similar conduct created "an aggravating or mitigating circumstance, of a kind or to a degree, not adequately taken into consideration by the Sentencing . Commission." *Rahman,* 189 F.3d at 156 (*quoting* 18 U.S.C. § 3553(b)) (internal quotation marks omitted). More broadly, we have suggested that a sentencing court may depart downward where findings as to uncharged relevant conduct made by the sentencing court based on a preponderance of the evidence substantially increase the defendant's sentence under the Sentencing Guidelines. See *United States v. Cordoba Murgas,* 233 F.3d 704, 709 (2d Cir.2000); *United States v. Gigante,* 94 F.3d 53, 56 (2d Cir.1996), *cert. denied sub nom Aloi v. United States,* 522 U.S. 868, 118 S.Ct. 179, 139 L.Ed.2d 119 (1997); *United States v. Concepcion,* 983 F.2d 369, 389 (2d Cir.1992), *cert. denied sub nom Frias v. United States,* 510 U.S. 856, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). While it is of course for the district court to determine whether it would be appropriate to exercise its authority to depart from the sentence suggested by the Guidelines, we agree with Mr. Cruz that the district court would have the authority to depart on either or both of these grounds should it find that the circumstances warrant such departure.

■■■■ The government is correct that "we have repeatedly held that a sentencing court's decision not to grant a downward departure is an exercise of discretion not ordinarily reviewable on appeal unless the district court committed an error of law or was unaware of the power to depart." *United States v. Felipe,* 148 F.3d 101, 113 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998). It is also correct that, generally speaking, "[w]hen a sentencing judge asserts that he has no authority to depart, or when he

says he wishes he could impose a sentence outside the calculated Guidelines range but is constrained by the Guidelines from doing so, we do not infer that he is saying that the Guidelines never permit departure (for that is obviously untrue) but that the facts of the case at hand do not provide any basis for lawful departure." *United States v. Brown,* 98 F.3d 690, 693 (2d Cir.1996). However, Brown involved "long established interpretations of the guidelines," *id.* at 694 n. 6, and we have stated elsewhere that we will not presume that a district court was aware of its authority "where the judge's option turns on an obscure point of law or where the judge's sentencing remarks create ambiguity as to whether the judge correctly understood an available sentencing option." *United States v. Rahman,* 189 F.3d 88, 157 (2d Cir.1999) (*quoting United States v. Sweeney,* 90 F.3d 55, 58 (2d Cir.1996)) (internal quotation marks omitted). Here, the district court's comment that it had "no leeway" does create an ambiguity as to whether it understood its authority to depart, particularly in light of the fact that the authority to depart from the "stacking" provisions of section 5G1.2 was only firmly established in this circuit when we issued *Rahman* on August 16, 1999—five months before the sentencing proceeding in the instant case and two days prior to oral argument. on the sentencing issues facing the district court. *See Rahman,* 189 F.3d at 156 (finding that the availability of the departure from section 5G1.2 had not previously been settled in this circuit). While the authority to depart from a sentence based in large part on relevant conduct, exemplified by our decisions in Cordoba–Murgas, Gigante and *Concepcion,* is a more venerable one, the district court's statement that it had no leeway to depart is sufficiently problematic that remand is in order. We can see no reason why the district court should be prevented from departing downward on either or both of these grounds on resentencing if it deems such departure appropriate. On remand, therefore, the district court is free to con-

sider either or both of these grounds for departure to the extent that it has not already done so.

### D. Evidentiary Issues

Mr. Cruz argues that while the district court sustained certain of his objections to the admission of statements suggesting that he had taken part in other criminal acts or was dangerous, the court erred in allowing other statements into evidence. We review the district court's rulings for clear abuse of discretion. *See United States v. Pipola,* 83 F.3d 556, 566 (2d Cir.), *cert. denied* 519 U.S. 869, 117 S.Ct. 183, 136 L.Ed.2d 122 (1996). Any error here was certainly harmless given the circumstances of this case. The evidence of Mr. Cruz's guilt with respect to the drug transactions with which he was charged was overwhelming, and the district court gave the jury appropriate limiting charges. Moreover, we do not agree with Mr. Cruz that the admission of this evidence can be presumed to have prevented the jury from considering the evidence before it in a dispassionate manner. We, therefore, decline to order a new trial.

### E. The Enhancement for Obstruction of Justice

Finally, Mr. Cruz contends that the district court erred in applying a two-level enhancement for obstruction of justice under section 3C1.1 of the sentencing guidelines. "We review the district court's determination of all the facts concerning obstruction of justice for clear error. But we review the question of whether such facts comprise an obstruction of justice *de novo.*" *United States v. Hernandez,* 83 F.3d 582, 585 (2d Cir.1996). Here, the district court found that Mr. Cruz had told Ms. Santiago, at the time of their arrest, to tell the police that the drugs were hers, unaware that a police officer nearby spoke Spanish and understood his instruction. See App. at 350–51 (Decision and Order dated September 16, 1999, at 9–10). Mr. Cruz argues that be-

cause he admitted shortly after this incident that the drugs were his, he did not wilfully attempt to obstruct justice. We agree with the district court that these facts constitute an attempted obstruction of justice under section 3C1.1. As noted by the district court, the Application Notes to that section provide that it applies in the case of an attempt to unlawfully influence a co-defendant, which is what appears to have occurred in this case. *See* U.S.S.G. § 3C1.1, cmt. n. 4. We therefore find no error in the district court's application of the obstruction enhancement in calculating the defendant's sentence.

### III. Conclusion

For the foregoing reasons, we vacate the defendant's convictions on counts two and three of the indictment, and remand the case to the district court for resentencing based on the remaining counts. On remand, the district court shall, to the extent that it has not done so already, consider whether, on the particular facts of this case, a downward departure from the mandatory stacking provisions of section 5G1.2 or based on the substantial effect of the court's relevant conduct findings might be appropriate. The findings of the district court are in all other respects affirmed.