United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 16, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-10266

_____

UNITED STATES OF AMERICA,

                            Plaintiff-Appellee,

versus

JOSEPH HORACE FIELDS, also known as Ding-Ding;
JASON DEJUAN LEATCH, also known as Criptonite;
DONALD TERRELL BANKS, also known as T-Blue,

                            Defendants-Appellants.

--------------------
Appeal from the United States District Court
for the Northern District of Texas, Dallas
3:03-CR-78-14-N
--------------------

Before GARWOOD, GARZA and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge: *

     Defendants-Appellants Joseph Horace Fields, Jason Dejuan

Leatch, and Donald Terrell Banks appeal their convictions and

sentences for participation in a drug conspiracy.  For the

foregoing reasons, we affirm all convictions.  We also affirm the

sentences of Fields and Banks.  We vacate Leatch's sentence and

_____

     *    Pursuant to 5TH CIR. R. 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

remand to the district court for re-sentencing.

## I. FACTUAL BACKGROUND

Appellants Joseph Horace Fields, Jason Dejuan Leatch, and Donald Terrell Banks were all involved with street gangs fueled by illegal trade in controlled substances. Fields and Leatch belonged to a gang known as the "Underground Nigger Crips" ("UNC") which operated on Cymbal Drive in Dallas, Texas. UNC members, who identified themselves by wearing the colors of the University of North Carolina at Chapel Hill, held specific ranks within the organization, corresponding to each member's seniority. The most experienced gang members were identified as "Original Gangsters" ("OGs"); the mid-level members received the rank of "Young Crips Original Gangsters" ("YCOGs"); and the lowest level for newer members was "Young Crips" ("YCs"). Leatch was a YC, having only joined the gang in 2000. Fields joined UNC in 1995 and held the rank of OG.

Banks was a member of the Pleasant Grove Crips ("PGC"), which shared a common lineage with UNC, and also operated an illegal narcotics business on Cymbal Drive. PGC, whose members signaled their allegiance by wearing Duke University apparel, adopted a ranking system similar to UNC's. The newest members were known as "Young Devils" ("YDs"); in the middle were "Young Devil Original Devils" ("YDODs"); and the most senior were "Original Devils" ("ODs"). Banks was a YDOD. Through an

2

alliance, PGC and UNC completely controlled the drug activity on Cymbal Drive, such that no one could sell drugs there without their permission.

Following a two-year investigation, a federal grand jury indicted fourteen defendants for the drug activity on Cymbal Drive. Thirteen of the defendants were members of UNC or PGC. The indictment alleged that all fourteen defendants conspired to possess and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)). The thirty-four other counts reflected actual individual undercover buys made by law enforcement officers during the investigation.

Fields was also indicted for violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) for possession of cocaine base with intent to distribute. Leatch was indicted on two counts for distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). Banks was also indicted for distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). Finally, Fields and Leatch were indicted for distribution of cocaine base and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) and 18 U.S.C. § 2.

Fields, Leatch, and Banks pled guilty to all counts except for the conspiracy charge. After a five day trial, the jury found them guilty of the conspiracy count, as well.

3

The Presentence Report ("PSR") found that Fields had a base offense level of 36 pursuant to U.S.S.G. § 2D1.1(a)(3) because he was accountable for 1,301.1 grams of cocaine base. It enhanced his sentence by two points in accordance with U.S.S.G. § 2D1.1(b)(1) due to the weapons in and around Cymbal Drive used by the gangs. The resulting U.S. Sentencing Guideline range was 292 to 365 months and the district court sentenced Fields to 292 months in prison for conspiracy to run concurrently with a 240 month sentence for the possession and distribution counts.

The PSR treated Banks's two convictions similarly to Fields's. It assigned him a base level of 36 for the conspiracy count with a two-point enhancement for possession of a dangerous weapon. The Sentencing Guidelines directed that Banks, with a criminal history category of V, could receive 360 months to life in prison. The district court sentenced Banks to 360 months for conspiracy and 240 months for the distribution count to run concurrently.

Likewise, Leatch was assigned a base level of 36 with the same two-point enhancement. The district court granted Leatch a downward departure in criminal history from a category of V to a category of IV. The corresponding Sentencing Guideline range was 324 to 405 months. The court sentenced Leatch to 324 months for conspiracy and 240 months for the distribution charges to run concurrently.

Leatch, Banks, and Fields appeal their conspiracy

convictions and sentences.

## II. DISCUSSION

Appellants assert that the evidence presented at trial was insufficient for the jury to find them guilty on the conspiracy count. They also argue that the district court should have granted their motions for a new trial because the verdict was against the great weight of evidence. Additionally, appellants contend that the district court committed reversible error by admitting into evidence a videotape of gang members.

Appellants also advance several arguments that their sentences are in error. First, they argue that the sentences violated their Sixth Amendment rights by being based, in part, on evidence not found by a jury. They also contend that the district court erred in calculating the amount of illegal narcotics sold by the conspiracy and in enhancing their sentences for weapons possession. Finally, Leatch argues that the district court erred by denying his requested two-level downward departure for acceptance of responsibility.

We address each of these arguments in turn.

### A. Sufficiency of Evidence

### 1. Standard of Review

"This Court reviews jury verdicts with great deference and evaluates the evidence in the light most favorable to the verdict and affords the government the benefit of all reasonable

5

inferences and credibility choices." *United States v. McCauley*, 253 F.3d 815, 818 (5th Cir. 2001) (citations and internal quotation marks omitted). We affirm the lower court's decision "if a rational trier of fact could have found that the evidence establishes the essential elements of the offense beyond a reasonable doubt." *United States v. Williams*, 985 F.2d 749, 753 (5th Cir. 1993).

## 2. Discussion

"To prove a conspiracy to possess and distribute a controlled substance, the government must prove beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy." *United States v. Peters*, 283 F.3d 300, 307 (5th Cir. 2002). When determining the defendant's guilt, the jury may consider if he acted in concert with others and take into account his "presence among or association with drug conspirators." *Id.* "Of course, mere presence or association with drug conspirators alone cannot establish that a person has voluntarily joined that conspiracy." *Id.* "The agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the development and collocation of circumstances." *United States v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992) (citations and internal quotation marks

6

omitted).  However, "the government may not prove up a conspiracy merely by presenting evidence placing the defendant in 'a climate of activity that reeks of something foul.'"  *Id.* (quoting *United States v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983)).

We note that evidence presented at trial showed the following: UNC and PGC had exclusive control over the illegal narcotics business on Cymbal Drive; the gangs used houses on Cymbal Drive for gun and drug storage; UNC and PGC policed the use of drugs among members; gang members did not fight over drug sales on Cymbal and in fact cooperated to fill drug orders; UNC and PGC used lookouts and counter-surveillance to avoid police interference; and a videotape filmed by UNC and PGC members showed them counting their drug money and bragging about how lucrative their arrangement was.  This evidence is qualitatively similar to that which this Court deemed sufficient to find a drug conspiracy in *United States v. Wilson*, 116 F.3d 1066 (5th Cir. 1997).[1]

Like the panel in *Wilson*, we find the evidence in the instant case sufficient for the jury to find a conspiracy.  As in the instant case, the gang in *Wilson* controlled who could sell drugs on its territory and dealt with hostile parties violently. *Id.* at 1074.  In both cases, the gangs' exclusive control of

---

[1]This opinion was later vacated only as to one count against Defendant Alfred A. Brown.  *See United States v. Brown*, 161 F.3d 256, 257 n.1 (5th Cir. 1998).

7

their territory combined with the fact that the defendants all sold drugs on the gangs' turf could allow "[a] rational jury [to] infer voluntary participation in the conspiracy." *Id.* Even though, in both cases, "individual dealers sold in competition with one another," this "does not preclude a finding of a single conspiracy." *Id.* at 1076. Thus, we find that the evidence in the instant case permits a reasonable trier of fact to find beyond a reasonable doubt that Appellants engaged in a conspiracy to sell illegal drugs.

## B. Verdict Against the Weight of Evidence

### 1. Standard of Review

"The decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court. An appellate court may reverse only if it finds the decision to be a 'clear abuse of discretion.'" *United States v. Dula*, 989 F.2d 772, 778 (5th Cir. 1993) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985)).

### 2. Discussion

Federal Rule of Criminal Procedure 33 states: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. In order for a district court to exercise its discretion, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict

stand." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). The verdict in this case was clearly not a miscarriage of justice. Thus, we find that the district court did not abuse its discretion in declining to grant new trials.

## C. Authentication of Evidence

### 1. Standard of Review

We review district courts' evidentiary rulings for abuse of discretion. *United States v. Sanders*, 343 F.3d 511, 517 (5th Cir. 2003). If we find an abuse of discretion, we review the error under the harmless error doctrine. *Id.*

## 2. Discussion

Appellants objected to a videotape made by UNC and PGC gang members being admitted into evidence. Law enforcement officers recovered the tape during a different drug enforcement operation. The detective who discovered it testified that it had not been altered in any way since she first obtained it. Since the original operator of the video camera was murdered, a different gang member testified as to the identity of the individuals on the tape – UNC and PGC gang members on Cymbal Drive.

Federal Rule of Evidence 901(a) mandates that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). We find that the

9

district court did not abuse its discretion by admitting the videotape into evidence.  Appellants do not call into question the tape's accuracy and there is no evidence that it was altered in any way.  We also remain unpersuaded that its admission meaningfully prejudiced the defendants, as the evidence in this case was quite strong without the videotape.

## D. Sixth Amendment Violation

### 1. Standard of Review

For Appellants who do not raise the *Booker* issue in the district court, thereby preserving the error, the proper standard of review is plain error.  *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).  Under that standard we will reverse if an appellant can show that (1) there is error; (2) the error is plain; and (3) the error affects "substantial rights," *i.e.*, the error "must have affected the outcome of the district court proceedings."  *United States v. Olano*, 507 U.S. 725, 732-34 (1993).  "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."'"  *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

### 2. Discussion

Appellants argue that their sentences violated the Sixth

Amendment per *United States v. Booker*, 125 S. Ct. 738 (2005).

The government concedes that the sentences were plainly in error.

Therefore, the first question that must be answered is whether

Appellants preserved their *Booker* objections to the district

court's sentencing under the U.S. Sentencing Guidelines.  While

Fields and Banks objected orally and in writing to their

sentences, they never voiced their objections in such a manner so

as to advise the district court they were complaining about Sixth

Amendment violations or used any terms that would implicate the

error complained of in *Booker*.  We require more than just an

objection to factual findings presented in the PSR.  *See United*

*States v. Bringier*, 405 F.3d 310, 316 (5th Cir. 2005) (finding

error was not preserved where objections to "sentence were not

expressed in terms of *Blakely* or the Sixth Amendment").

This is not the case for Leatch.  In addition to

substantively complaining about the calculation of drug totals

involved in this case, his motion to the district court for

downward departure included a complaint that implicitly

referenced the constitutional problem at issue in *Booker*: "Mr.

Leach also moves for a downward departure on the basis of

uncharged conduct being used to dramatically raise his sentence.

*See United States v. White*, 240 F.3d 127, 136 ([2d] Cir. 2001)."[2]

---

[2]The appellant in *White*, objecting to the quantity of
cocaine base applied in sentencing, argued that the district
court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by

11

His attorney voiced this complaint during the sentencing hearing as well: "Also we move for a downward departure based upon the uncharged conduct dramatically raising a sentence . . . ." We think these statements successfully preserved the *Booker* error. Since the government cannot identify "record evidence that would prove beyond a reasonable doubt that the district court would not have sentenced [Appellant] differently had it acted under an advisory Guidelines regime," we vacate Leatch's sentence and remand to the district court. *United States v. Akpan*, 407 F.3d 360, 377 (5th Cir. 2005).[3]

As they did not preserve their error, we review the sentences of Fields and Banks for plain error. The government contends that Appellants' substantial rights were not affected by the *Booker* error. In order to show that substantial rights were affected, Appellants must "demonstrate[] that the sentencing judge--sentencing under an advisory scheme rather than a mandatory one--would have reached a significantly different result." *Mares*, 402 F.3d at 521. A review of the sentencing hearing does not yield any evidence that the sentencing judge

---

"us[ing] facts not before the jury to impose a sentence." 240 F.3d at 136. We have held that an *Apprendi*-based objection preserves *Booker* error. *See United States v. Pineiro*, __ F.3d __, 2005 U.S. App. LEXIS 9226, *9 (5th Cir. May 20, 2005).

[3]Appellants have not identified, nor have we found, any evidence that Fields and Banks adopted the grounds Leatch advanced for downward departure in this case.

would have reached a different result.  Thus, we affirm the sentences of Banks and Fields.

## E. Drug Quantity Calculations During Sentencing

## 1. Standard of Review

We review the district court's interpretation and application of federal Sentencing Guidelines *de novo* and its findings of fact for clear error.  *United States v. Sprick*, 233 F.3d 845, 852 (5th Cir. 2000).  "[W]hen a district court has imposed a sentence under the Guidelines, this [C]ourt continues after *Booker* to review the district court's interpretation and application of the Guidelines de novo."  *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005).

## 2. Discussion

"[T]he district judge 'may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence.'"  *United States v. Medina*, 161 F.3d 867, 876-77 (5th Cir. 1998) (quoting *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998)).  Here, the underlying facts found by the PSR are not really in contention.  Rather, Appellants object to the manner in which the amount of drugs was estimated based on those facts.  *Medina* makes clear that district courts need not be exact, *i.e.*, the district court may approximate drug totals.  *See id.* at 877.  These estimations will be reviewed for clear error.  *See id.*

13

The government's methodology was not flawed. It was based on the evidence and consistently used the low end of witnesses' estimates. Thus, we do not believe the drug amounts are clearly in error.

## F. Enhancement for Possession of Weapon

### 1. Standard of Review

As stated *supra*, the standard of review is *de novo* for applications of the U.S. Sentencing Guidelines and clear error for factual findings.

### 2. Discussion

Appellants argue that the district court erred in applying a two-level enhancement to their sentences pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. U.S.S.G. § 2D1.1(b)(1) permits a two-level enhancement if the defendant possessed a dangerous weapon while trafficking or possessing illegal narcotics. *United States v. Partida*, 385 F.3d 546, 562 (5th Cir. 2004). It is the government's burden to show a spacial and temporal nexus between the defendant, the gun and the drug activity, by a preponderance of the evidence. *Id.; United States v. Jacquinot*, 258 F.3d 423, 430 (5th Cir. 2001). The enhancement should not be applied, though, where "the defendant establishes that it was clearly improbable that the weapon was connected with the offense." *Id.* at 430-31. "Instead, for the enhancement to be proper the government must show that 'the weapon was found in

14

the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred.'" *Partida*, 385 F.3d at 562 (quoting U.S.S.G. § 2D1.1 application note 3). "'[S]entencing courts may hold a defendant accountable for a co-defendant's reasonably foreseeable possession of a firearm during the commission of a narcotics trafficking offense, pursuant to section 2D1.1(b)(1).'" *United States v. Thomas*, 120 F.3d 564, 574 (5th Cir. 1997) (quoting *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990)).

The PSR states that "numerous weapons" were found "in and around" Cymbal Drive. Furthermore, government surveillance showed that members of UNC and PGC possessed firearms while on Cymbal Drive. This is coupled with substantial testimony for various gang members regarding the possession of firearms by themselves and other gang members on Cymbal Drive. Appellants point to no evidence that shows the relationship between these guns and their drug conspiracy to be improbable. Likewise, they present no evidence that the possession and storage of firearms was unforeseeable or unknown to them. Thus, we affirm the district court's ruling.

**G. Denial of Two-Level Downward Adjustment under U.S.S.G. § 3E1.1**

**1. Standard of Review**

"Whether a defendant has accepted responsibility for a crime is a factual question and the standard of review is even more

15

deferential than clear error." *United States v. Spires*, 79 F.3d

464, 467 (5th Cir. 1996). *Accord United States v. Outlaw*, 319

F.3d 701, 705 (5th Cir. 2003). "Because the trial court's

assessment of a defendant's contrition will depend heavily on

credibility assessments, the 'clearly erroneous' standard will

nearly always sustain the judgment of the district court."

*Spires*, 79 F.3d at 467. "However, if this [C]ourt determines

that the district court misapplied the guidelines, remand is

appropriate unless this court concludes, on the record as a

whole, that the error is harmless." *Outlaw*, 319 F.3d at 705.

**2. Discussion**

Leatch argues that the district court erred when it failed

to grant him a two-point downward adjustment under U.S.S.G. §

3E1.1 for acceptance of responsibility. Although Leatch did go

to trial, he points to U.S.S.G. § 3E1.1's application notes which

provide that in some cases a defendant who defends himself in

court could still receive the downward departure:

> Conviction by trial, however, does not automatically
> preclude a defendant from consideration for such a
> reduction. In rare situations a defendant may clearly
> demonstrate an acceptance of responsibility for his
> criminal conduct even though he exercises his
> constitutional right to a trial. This may occur, for
> example, where a defendant goes to trial to assert and
> preserve issues that do not relate to factual guilt
> (e.g., to make a constitutional challenge to a statute or
> a challenge to the applicability of a statute to his
> conduct).

U.S.S.G. § 3E1.1, application note 2. However, Leatch did not

16

demonstrate an acceptance of responsibility for his participation in the drug conspiracy at the sentencing: "[A]ll I sold to undercover was a gram and a half out of three cases. Out of three – three different deliveries to undercover police officer, all they got from me was a gram and a half, and I am fixing to get, you know, almost 30 years." And he and his co-defendants continued to argue throughout the trial (and even on appeal) that they were independent operators and did not participate in a larger conspiracy to sell drugs on Cymbal Drive. The issue of whether or not gang members conspired with one another to sell drugs and monopolize the illegal narcotic business on Cymbal Drive is an "operative fact" and distinguishes this case from *United States v. Fells*, 78 F.3d 168 (5th Cir. 1996).

Thus, we affirm the district court's ruling.

### III. CONCLUSION

For the forgoing reasons, we AFFIRM the convictions of Fields, Leatch, and Banks. We also AFFIRM the sentences of Fields and Banks. However, we VACATE Leatch's sentence and REMAND to the district court for re-sentencing.

EMILIO M. GARZA, Circuit Judge, specially concurring:

I concur with the majority's opinion, except for the stated standard of review for Sentencing Guidelines interpretation. *See* Majority Op. at 13-14. For the reasons stated in my concurrence in *United States v. Creech*, No. 04-40354, 2005 WL 1022435, at *9 (5th Cir. May 3, 2005), I do not agree that we review a district court's interpretation of the Sentencing Guidelines *de novo*. While endorsed in *Villegas*, this standard is inconsistent with the Supreme Court's decision in *Booker*, which requires appellate courts to review sentencing decisions for unreasonableness. *Booker*, 125 S. Ct. at 767. Because I agree that the district court in this case correctly interpreted the Sentencing Guidelines, I conclude that the sentence was not unreasonable. *See Mares*, 402 F.3d at 519 ("Given the deference due the sentencing judge's discretion under the *Booker/Fanfan* regime, it will be rare for a reviewing court to say [a sentence in which the district court properly applied the Guidelines] is 'unreasonable.'").

Accordingly, I concur in the majority opinion except with respect to the stated *de novo* standard of review.