**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No.  99-51091**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**GILBERT GARCIA, JR.,**

**Defendant-Appellant.**


_____

Appeal from the United States District Court
for the Western District of Texas

_____

February 15, 2001

Before HIGGINBOTHAM and DeMOSS, Circuit Judges, and KENT,[*] District Judge.

SAMUEL B. KENT, District Judge:

Defendant  Gilbert  Garcia  Jr.  appeals  his  conviction  and sentence  for  conspiracy  to  possess  with  intent  to  distribute  a

_____

[*] District Judge of the Southern District of Texas, sitting by designation.

quantity of marijuana and aiding and abetting the possession with the intent to distribute a quantity of marijuana. He argues: (1) that the evidence was insufficient to sustain his conviction for aiding and abetting, (2) that the District Court erred in denying his requested downward adjustment for minor participation in the offense, and (3) that under the recent decision of the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the issue of drug quantity should have been included in the indictment and charged to the jury. For the reasons stated below, we affirm his conviction, but vacate his sentence and remand for resentencing.

## I. BACKGROUND

Defendant Gilbert Garcia Jr. was indicted for conspiracy to possess with an intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count One) and aiding and abetting the possession of marijuana with an intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts Three and Six). The Government filed notice that it sought a penalty enhancement under 21 U.S.C. § 841(b)(1)(A) for offenses involving more than 1000 kilograms of marijuana.

The evidence at trial showed that Defendant allowed his truck maintenance facility to be used to store marijuana for a Mexican drug distribution operation headed by Omar Rubio. The organization smuggled marijuana from Mexico to San Antonio, Texas where it was

2

stored pending further distribution. Tractor-trailers loaded with marijuana were stored at Garcia's facility on at least five occasions. Although Garcia was present at the first delivery, he was not present at subsequent deliveries. Garcia gave a key to the property to one of the members of the drug distribution operation, Rene Montes-Salinas, with instructions that he be notified of further deliveries. Count One of the indictment concerns the first delivery, which took place on September 24, 1998. Count Three of the indictment concerns an October 4, 1998 delivery, and Count Six concerns deliveries on November 5, 1998 and November 6, 1998. Garcia was paid between $3,000 and $5,000 for each shipment. The five shipments allegedly totaled more than 5,600 pounds of marijuana.

A jury found the Defendant guilty on all three counts of the indictment. Because the presentence report ("PSR") indicated that Garcia's offenses involved more than 1,000 but less than 3,000 kilograms of marijuana, Garcia was assigned a base level of 32. See U.S.S.G. § 2D1.1(c)(4). The PSR recommended that Garcia receive a two-level downward adjustment in his offense level because he met the requirements of § 2D1.1(b)(6).[1] The total offense level of 30 combined with Garcia's criminal history category of I, resulted in a Sentencing Guideline range of 97-121 months imprisonment.

---

[1] This provision gives a defendant a two-level reduction if he meets the requirements of § 5C1.2, the "safety valve" provision discussed infra note 2.

Because the offenses involved more than 1,000 kilograms of marijuana, Garcia was subject to a mandatory minimum sentence of ten years imprisonment followed by five years supervised release. See 21 U.S.C. § 841(b)(1)(A). Because Garcia qualified under the "safety valve" provision of § 5C1.2,[2] however, the PSR recommended that Garcia be sentenced without regard to the mandatory minimum.

Garcia objected to the PSR on the grounds that, among other things: (1) he was entitled to a two-level downward adjustment in his offense pursuant to § 3B1.2(b) because he played a minor role in the offense of which he was convicted, (2) the PSR incorrectly determined the quantity of drugs involved in his offense, and (3) the drug quantity determination should have been submitted to a jury.

At sentencing, the District Judge determined that Garcia qualified under the "safety valve" provision of § 5C1.2 to be sentenced without regard to the statutory minimum sentence set forth in § 841(b)(1)(A). Garcia was thus sentenced to 97 months imprisonment followed by five years supervised release for each of the counts of which he was convicted, to run concurrently. He was

---

[2] The "safety valve" allows a defendant to avoid a mandatory minimum if he meets certain conditions, which stated loosely are: (1) not having more than 1 criminal history point, (2) not using violence or the credible threats of violence or possessing a dangerous weapon in connection with the offense, (3) not causing death or serious bodily injury, (4) not being an organizer, leader, or supervisor and not engaging in a continuing criminal enterprise, and (5) cooperating fully with the Government.

4

also required to pay a $300 special assessment.  The District Judge overruled the remaining objections.  Defendant timely appealed.

## II. ANALYSIS

A.  *Sufficiency of the Evidence*

Defendant argues that his aiding and abetting conviction concerning the incident on or about October 4, 1998 (Count Three) is unsupported by the evidence.  He  contends that the Government failed to prove: (1) that he committed an overt act designed to aid in the success of the venture, (2) that the substance alleged to have been distributed was in fact marijuana, or (3) how much marijuana, if any, was involved.  Garcia filed a motion for a judgment of acquittal challenging the sufficiency of the Government's evidence at the close of the Government's case-in-chief and at the end of all evidence.  The District Judge denied both motions.

We review the denial of a motion for a judgment of acquittal de novo.  See United States v. Greer, 137 F.3d 247, 249 (5th Cir), cert denied, 524 U.S. 920 (1998).  In doing so, we must consider whether "a rational trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt."  United States v. Davis, 226 F.3d 346, 354 (5th Cir. 2000).  The Court considers "the evidence, all reasonable inferences drawn therefrom, and all credibility determinations in

5

the light most favorable to the prosecution." United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). Our role does not extend to weighing the evidence or assessing the credibility of witnesses. See id.

To convict a defendant for possession of marijuana with intent to distribute, the Government must prove that the defendant (1) knowingly; (2) possessed marijuana; (3) with the intent to distribute. See id. To prove that a defendant aided and abetted in the possession of marijuana with intent to distribute, the Government must prove that the elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture succeed. See 18 U.S.C. § 2; United States v. Delagarza-Villarreal, 141 F.3d 133, 140 (5th Cir. 1997). "Associate" means that the defendant shares in the principal's criminal intent. United States v. Jaramillo, 42 F.3d 920, 923 (5th Cir. 1995). "Participate" means that the defendant engages in some affirmative conduct designed to aid the venture or assists the perpetrator of the crime. Id. A Defendant "need not have actual or constructive possession of the drugs to be guilty of aiding and abetting possession with intent to distribute." United States v. Williams, 985 F.2d 749, 753 (5th Cir. 1993).

Defendant's first argument is that as to the October 4, 1998 offense, the record does not contain evidence that he actively

6

participated in furthering the criminal activity.  The evidence at trial established that Defendant: (1) was informed of the delivery to his property and suggested that it be done at night, (2) was also informed when the truck arrived, and (3) was informed the next day when the drivers left his lot.

Defendant claims that the only evidence of affirmative conduct on this occasion was his suggestion that the unloading take place at night.[3] This evidence, standing alone, Defendant argues, is insufficient to support his aiding and abetting conviction. Defendant also argues that his previous act of giving the key to his property cannot be considered as evidence here because such only aided a general scheme of possession of marijuana, not the specific offense on October 4, 1998. See United States v. Lombardi, 138 F.3d 559, 561 (5th Cir. 1998)(holding that the Government must show that Defendant aided and abetted the specific crime, not just the overall scheme).

We conclude, however, that Defendant's assent on this occasion

---

[3] A party to a continuing conspiracy may be criminally liable for a substantive offense committed by a co-conspirator in furtherance of the conspiracy, even though the party does not participate in the substantive offense, or have any knowledge of it.  See Pinkerton v. United States, 328 U.S. 640, 647, 66 S. Ct. 1180, 1183, 90 L. Ed. 1489 (1946); United States v. Acosta, 763 F.2d 671, 681 (5th Cir. 1985).  However, a jury must be given an instruction under this theory, a so-called Pinkerton instruction, to be so convicted.  See United States v. Pierce, 893 F.2d. 669, 676 (5th Cir. 1990); United States v. Basey, 816 F.2d 980, 999 (5th Cir. 1987).  As Defendant points out, the jury was not given this Pinkerton instruction.  Thus, his aiding and abetting conviction cannot rest on a conspiracy theory.

7

to the use of his property for the storage of marijuana constitutes the requisite affirmative conduct to support his aiding and abetting conviction. Defendant did not have to physically appear on his property to be guilty of the offense. Just as the mere presence at the scene of the crime is not sufficient, by itself, to support aiding and abetting liability,[4] mere absence from the scene does not, by itself, negate such liability. See Collins v. United States, 65 F.2d 545, 547 (5th Cir. 1933).

Defendant's second argument is that the Government's evidence did not establish that the substance stored on his property on October 4, 1998 was in fact marijuana. Defendant notes that no witness testified that they saw marijuana. The Government's witness was not at the property on the day in question, and the surveillance officers did not see the contents of the shipment. The Government responds, however, that there is substantial evidence that the shipment was marijuana. This evidence includes testimony that: (1) the other participants were seeking a place "where marijuana could be unloaded," (2) Defendant agreed to use his property specifically for the unloading of marijuana, (3) on a previous occasion, Defendant was present at the time of delivery to verify that the substance was marijuana, (4) Defendant would have been paid considerably more to store a harder drug, such as

---

[4] See United States v. Williams, 341 U.S. 58, 64 n.4, 71 S. Ct. 595, 599, 95 L. Ed. 747 (1951); Williams, 485 F.2d at 753.

cocaine. From this testimony, a jury could reasonably have inferred that the substance unloaded on October 4, 1998, for which Defendant was paid thousands of dollars to store, was in fact marijuana, and not Tootsie Rolls.

Defendant's final argument is that the Government failed to prove the quantity of marijuana. The Government was not required, however, to prove drug quantity to sustain a conviction under § 841. See 21 U.S.C. § 841(a). Drug quantity is relevant only to Defendant's Apprendi argument, discussed infra.

Because the evidence was sufficient to convict Defendant of aiding and abetting the possession of marijuana with the intent to distribute, we affirm his conviction and sentence for the October 4, 1998 offense.


B. *Adjustment for Minor Participation*

Defendant argues that he should have received a two-level downward adjustment under the Sentencing Guidelines for being a minor participant in criminal activity. See U.S.S.G § 3B1.2(b). The Guidelines' commentary defines "minor participant" as "any participant who is less culpable than most other participants but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.3. The commentary also indicates that to qualify, the Defendant must be "substantially less culpable." See U.S.S.G. § 3B1.2, cmt. background. A defendant has the burden of showing that

he is entitled to the downward adjustment. See United States v. Marmolejo, 106 F.3d 1213, 1217 (5th Cir. 1997). Minor participation is a "sophisticated factual determination," to be made by the sentencing judge. United States v. Gallegos, 868 F.2d 711, 713 (5th Cir. 1989). The determination is to be made in light of all relevant conduct ("all conduct within the scope of § 1B1.3 (Relevant Conduct)"), "not solely on the basis of elements and acts cited in the count of conviction." See U.S.S.G. ch.3, pt. B, introductory comment. The sentencing judge must "articulate the factual basis for the finding that [defendant] was an average participant." See United States v. Melton, 930 F.2d 1096, 1099 (5th Cir. 1991). But see Gallegos, 868 F.2d at 713 ("[A] simple statement that Defendant was not a 'minor participant' will suffice"). We review a judge's finding in this regard under a clearly erroneous standard. See United States v. Morrow, 177 F.3d 272, 304-5 (5th Cir.), cert. denied, 528 U.S. 932 (1999).

Initially, Defendant disputes that he must be "substantially less culpable" to qualify as a minor participant. He argues that the commentary defines "minor participant" simply as "less culpable" and that the commentary is binding on the sentencing court. See United States v. Stinson, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915, 123 L. Ed. 2d 598 (1993)("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading

10

of, that guideline."). The Guidelines' commentary, however, uses the phrase "substantially less culpable." See U.S.S.G § 3B1.2. cmt. background. Moreover, our decisions, both before and after the Supreme Court clarified in Stinson that the commentary is binding, have held that a defendant must be "substantially less culpable than the average participant" to qualify as a minor participant. United States v. Brown, 54 F.3d 234, 241 (5th Cir. 1995); see also United States v. Thomas, 963 F.2d 63, 65 (5th Cir. 1992); United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir. 1988).

Defendant argues that he was simply a small cog in a large wheel. The organization for which he provided services, Defendant notes, was a far-flung drug operation based in Mexico with approximately one hundred participants, operating since the late 1980s in several states including Texas, Arkansas, and Florida, and reputed to smuggle a ton of marijuana and cocaine across the Texas border per week. In comparison to the scope of the operation, Defendant argues, his role was minor. Defendant objected on these grounds to the PSR which recommended against the downward adjustment. The sentencing Judge overruled the objection, stating that Defendant "supplied a place for these drugs to be housed and stored when they were brought from Mexico, unloaded and transported to other destinations."

Section 3B1.2 does not contemplate that the participation level is to be evaluated in reference to the entire criminal

11

enterprise of which Defendant is a part. See United States v. Burnett, 66 F.3d 137, 140 (7th Cir. 1995)("3B1.2 does not ask whether the defendant was minor in relation to the organization . . . it asks . . . whether he was minor . . . in relation to the conduct for which he was has been held accountable."). Instead, section 3B1.2 asks whether a defendant's involvement is comparable to that of an "average participant." Buenrostro, 868 F.2d at 138. Defendant allowed his property to be used as a stash house. He was present for the first delivery and was kept abreast of subsequent deliveries. One of the Government's witnesses testified that the organization could not function without Defendant's "shop." Furthermore, Defendant was paid for each delivery. Most importantly, however, Defendant was not held responsible for the entire criminal history of the drug organization. Rather, his sentence was based on conduct in which he was directly involved, namely drug storage on his property. As such, his role was not minor, but actually coextensive with the conduct for which he was held accountable. See Marmolejo, 106 F.3d at 1217 (holding that because only the drugs defendant actually transported were attributed to him in calculating his sentence, he was not a minor participant in relation to the offense); United States v. Atanda, 60 F.3d 196, 199 (5th Cir. 1995)("[W]hen a sentence is based on an activity in which a defendant was actually involved, § 3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor or

12

minimal."). We conclude, therefore, that the District Judge's finding that Defendant was not a minor participant was not clearly erroneous.

C.  *Drug Quantity and Apprendi*

At oral argument, the parties were in agreement as to the effect of the recent decision of the United States Supreme Court in Apprendi on this case: Defendant's term of supervised release should be reduced from five years to three years. We agree, but hold that under the facts of this case Apprendi also requires that Defendant's term of imprisonment be reduced from 97 months to no more than 60 months.[5]

Under Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at —, 120 S. Ct. at 2362-3. We recently held in United States v. Doggett, that when

---

[5] Defendant did not challenge his prison sentence in his Apprendi argument either in his brief or at oral argument. Although an argument not raised on appeal is ordinarily deemed abandoned or waived, the Court may consider it on its own accord when manifest injustice would otherwise occur. United States v. Quiroz, 22 F.3d 489, 490-91 (2nd Cir. 1994); cf. United States v. Winn, 948 F.2d 145, 157 (5th Cir. 1991)(holding that in the absence of manifest injustice, the Court will not consider arguments raised for the first time in appellant's reply brief). It would be manifestly unjust under the circumstances to ignore the clear-cut, mechanical application of Apprendi to Defendant's prison sentence simply because Defendant did not ask for all the relief to which he was entitled.

13

the Government seeks enhanced penalties based on the amount of drugs under either § 841(b)(1)(A) or (B), drug quantity is an element of the offense that must be submitted to a jury under Apprendi. See United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000). Doggett clarifies, however, that when a defendant's sentence does not exceed the statutory maximum authorized by the jury's findings, Apprendi does not affect the sentence. See id. at 165; United States v. Meshack, 225 F.3d 556, 575-76 (5th Cir. 2000), cert. denied, 121 S. Ct. 834 (2001).

In the case before us, drug quantity was neither stated in the indictment nor charged to the jury. Defendant challenged his sentence on these grounds at the sentencing hearing. Thus, he has adequately preserved error, and the issue is before us on de novo review. See Doggett, 230 F.3d at 165. Although Defendant was sentenced without regard to the penalty enhancement that the Government sought under 21 U.S.C. § 841(b)(1)(A), his sentence nevertheless exceeded the statutory maximum authorized by the jury's findings. Without a jury determination of drug quantity, the default sentencing provision for a marijuana conviction is provided by § 841(b)(1)(D).[5] See United States v. Salazar-Flores,

---

[5] § 841(b)(1)(D) governs convictions involving less than 50 kilograms of marijuana. Sentencing Defendant beyond the maximum provided by § 841(b)(1)(D) necessarily attributes 50 kilograms or more of marijuana to Defendant and hence runs afoul of Apprendi. Doggett employed § 841(b)(1)(C) as the default, but the case involved methamphetamine to which § 841(b)(1)(D) does not apply. See Doggett, 230 F.3d at 162.

14

2001 WL 25691, * 2 (5th Cir. Jan. 25, 2001); <u>United States v. Nicholson</u>, 231 F.3d 445, 454 (8th Cir. 2000); <u>United States v. Rogers</u>, 228 F.3d 1318, 1327 n.15 (11th Cir. 2000); <u>United States v. Nordby</u>, 225 F.3d 1053, 1059 (9th Cir. 2000). Under § 841(b)(1)(D), the maximum prison sentence for a person without a prior conviction for a felony drug offense is five years (60 months). Defendant's prison sentence of 97 months exceeds this maximum, and accordingly must be reduced to no more than 60 months.

Defendant's term of supervised release must likewise be reduced, as discussed in oral argument. Section 841(b)(1)(D) does not itself provide a maximum for the term of supervised release. <u>See</u> 21 U.S.C. § 841(b)(1)(D) (stating that the term of supervised release should be at least two years). Nonetheless, unless § 841(b)(1)(A) or (B) applies, the maximum term of supervised release for a marijuana offense under § 841 is three years for persons without a prior felony drug conviction. <u>See</u> 18 U.S.C. § 3583(b)(2) (providing that "except as otherwise provided" the maximum term of supervised release for a Class C or D felony is three years); U.S.S.G. § 5D1.2(a)(2); <u>United States v. Kelly</u>, 974 F.2d 22, 24 (5th Cir. 1992)(noting that the proper term of supervised release under § 841(b)(1)(D) is two to three years). Although § 841(b)(1)(A) mandates a minimum term of five years supervised release, the safety valve provision should have prevented this mandatory minimum from being imposed. <u>See</u> U.S.S.G. §5D1.2, cmt. n.1; <u>United States v. Hendricks</u>, 171 F.3d 1184, 1186 (8th Cir. 1999). In addition,

15

because § 841(b)(1)(A) imposes, on the basis of drug quantity, a term of supervised release greater than the statutory maximum of three years, under <u>Apprendi</u> the issue of drug quantity would have to have been determined by the jury for this enhancement to be applied. <u>See</u> <u>Doggett</u>, 230 F.3d at 165 n.2 (modifying a term of supervised release because it exceeded the statutory maximum of three years). Accordingly, Defendant's term of supervised release must be reduced from five years to no more than three years.

## III. <u>CONCLUSION</u>

For the reasons stated above, we AFFIRM Defendant's conviction, but VACATE his sentence and REMAND the case to the District Court for resentencing consistent with this opinion.