UNITED STATES of America,
Appellee,

v.

Abraham McLEOD, Defendant–
Appellant.

Docket No. 99–1756.

United States Court of Appeals,
Second Circuit.

Argued May 2, 2001.

Decided May 21, 2001.

Anthony N. Iannarelli, Jr., New York, NY, for defendant-appellant.

Celeste Koeleveld, Asst. U.S. Atty., New York, NY, (Mary Jo White, U.S. Atty., Preetinder Bharara, Asst. U.S. Atty., New York, NY, on the brief), for appellee.

Before: JON O. NEWMAN, and CABRANES, Circuit Judges, and UNDERHILL,* District Judge.

JON O. NEWMAN, Circuit Judge.

This criminal appeal merits a brief opinion primarily to make clear the proper method for imposing sentences on multiple counts where the total punishment sought to be imposed by the sentencing judge exceeds the statutory maximum sentence on any one count. Abraham McLeod appeals from the December 3, 1999, judgment of the District Court for the Southern District of New York (Colleen McMahon, District Judge) sentencing him to consecutive sentences totaling 121 months after he pled guilty to five counts of income tax violations. On appeal, McLeod contends: (1) that the District Court failed to apply the standard of proof beyond a reasonable doubt in determining his relevant conduct, which enhanced his adjusted offense level, (2) that the court improperly calculated his adjusted offense level by denying him a three-level reduction for acceptance of responsibility and adding a two-level increase for obstruction of justice, and (3) that the court unlawfully ordered his sentences to run consecu-

tively. We reject all of these contentions, but conclude that the sentencing judge's method of achieving consecutiveness was partially incorrect, even though the total punishment imposed was correctly determined. We therefore affirm the total 121–month sentence, but modify the sentences on the five counts to conform to the requirements of the Sentencing Guidelines, and affirm the judgment as modified.

### Facts

McLeod operated McLeod's Tax Service, a tax-return preparation firm that offered its customers assistance in filing fraudulent income tax returns. McLeod and employees acting at his direction completed customers' tax returns that listed, among other things, non-existent or falsely inflated child-care credits and charitable and other deductions. McLeod also falsified answers on clients' audit questionnaires and provided audited clients with fraudulent documents to substantiate their returns. The Internal Revenue Service calculated that the tax loss caused by McLeod's various schemes was $7,578,925. This sum comprised $340,867, determined by IRS fraud agents to be the tax loss for a group of 46 returns, and $7,238,058, determined by an IRS civil audit to be the tax loss for 2,866 other returns.

Pursuant to a plea agreement, McLeod pled guilty to a five-count information. Count One charged assisting in the preparation of the 46 fraudulent tax returns, in violation of 26 U.S.C. § 7206(2), and each of Counts Two through Five charged obstructing the administration of the tax laws with respect to one false tax return, in violation of 26 U.S.C. § 7212(a).

---

* Honorable Stefan R. Underhill, United States District Court for the District of Connecticut, sitting by designation.

The Government sent McLeod a so-called *Pimentel* letter, *see United States v. Pimentel*, 932 F.2d 1029 (2d Cir.1991), explaining its belief that the base offense level should be 22, *see* U.S.S.G. §§ 2T1.4(a)(1), 2T4.1 (tax loss between five and ten million dollars), plus two levels for being in the business of preparing tax returns, *see id.* § 2T1.4(b)(1)(B), and an additional four levels for his organizer role, *see id.* § 3B1.1(a), minus three levels for acceptance of responsibility, *see id.* § 3E1.1(a), for an adjusted offense level of 25. The letter cautioned that the Government would oppose a reduction for acceptance of responsibility "[s]hould the defendant falsely deny or frivolously contest relevant conduct for which he is accountable under U.S.S.G. § 1B1.3."

At the plea allocution, McLeod acknowledged that he had helped his employees prepare tax returns containing fraudulent deductions and that he had signed off on forms that his employees prepared, knowing them to contain false information. He "took responsibility for everything" that was on the fraudulent tax forms. He also conceded that he concocted receipts for his customers and assisted them in filing false questionnaires in response to audits. Judge McMahon accepted McLeod's guilty plea, but only after cautioning him that "[t]here will be the possibility of a consecutive sentence here" and ensuring that he understood what that meant.

At the sentencing hearing, however, McLeod challenged the inclusion of the tax loss resulting from the civil audit and disclaimed responsibility for the false returns covered by the audit. He testified that the willingness of his employees to claim false deductions could have only resulted from a misunderstanding. The Government rebutted McLeod's claim with the testimony of an IRS agent who testified that the employees told him that McLeod taught them how to prepare returns: to assign the client a refund that is approximately half of their tax due, to give clients charitable deductions equal to approximately ten percent of their income, and to use names of child-care providers from a list McLeod supplied, names unknown to the taxpayers.

Judge McMahon found that McLeod's testimony at the sentencing hearing was false, denied him a reduction for acceptance of responsibility, and added two levels for obstruction of justice. She also included the $7.2 million tax loss discovered by the civil audit as relevant conduct. This gave McLeod an adjusted offense level of 30,[1] which in Criminal History Category III yielded a sentencing range of 121 151 months. The Court then sentenced McLeod to 121 months, the bottom of that range.

About a week later, the Court endeavored to correct the sentence to remedy the initial failure to apportion the 121 months of imprisonment among the five counts of conviction, each of which carries a three-year statutory maximum. The court apportioned the 121–month sentence as follows: 36 months on Count One, 22 months on Count Two, and 21 months on Counts Three through Five, with all sentences to run consecutively.

### Discussion

#### I. Relevant Conduct

McLeod contends that the sentencing judge could not include as relevant conduct the $7.2 million tax loss resulting from the civil audit unless she found beyond a rea-

---

**1.** This comprised a base offense level of 22, plus two levels for being in the business of preparing tax returns, two levels for obstruction of justice and four levels for being a leader or organizer.

sonable doubt that the evidence at the sentencing hearing established such a loss. He bases this argument on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), extracting from *Apprendi* a claim only for a heightened standard of proof, not a claim for submission of the fact-finding task to a jury.

■ McLeod's claim requires an understanding of the Guidelines' concept of "total punishment." This is the punishment determined after all relevant Guidelines' calculations have been made. U.S.S.G. § 5G1.2(b). If this "total punishment" exceeds the highest statutory maximum on any count, the Guidelines require that the sentences run consecutively, to the extent necessary to achieve the "total punishment." *Id.* § 5G1.2(d).

■ We have ruled that *Apprendi* is inapplicable to Guidelines calculations that do not result in a sentence on a single count above the statutory maximum for that count. *United States v. Garcia*, 240 F.3d 180, 183–84 (2d Cir.2001). In addition, we have ruled that the "preponderance of the evidence" standard applies to determinations of relevant conduct for purposes of ascertaining the "total punishment," U.S.S.G. § 5G1.2(b), which may exceed the statutory maximum on a single count. *United States v. White*, 240 F.3d 127, 136–37 (2d Cir.2001); *see also United States v. Cordoba–Murgas*, 233 F.3d 704, 708–09 (2d Cir.2000) ("preponderance of the evidence" standard applicable to fact-finding supporting upward departure). Finally, we have ruled that *Apprendi* is inapplicable to a sentencing judge's decision, when required by the Guidelines (because the "total punishment" exceeds the highest statutory maximum on any count), to run sentences consecutively. *White*, 240 F.3d at 133–36. In special circumstances, a severe sentence that would result from upward adjustments or consecu-

tiveness, imposed because of facts found under a "preponderance of the evidence" standard, may justify a downward departure. *United States v. Gigante*, 94 F.3d 53, 56 (2d Cir.1996) (upward adjustments); *United States v. Rahman*, 189 F.3d 88, 154–57 (2d Cir.1999) (consecutive ness).

■■ Thus, the "preponderance of the evidence" standard was properly applied to determine McLeod's relevant conduct, despite the resulting consecutiveness of his sentences. It was also proper to include the tax loss ascertained in the civil audit in determining relevant conduct. *United States v. Bryant*, 128 F.3d 74, 75–76 (2d Cir.1997).

## II. Adjusted Offense Level

McLeod challenges both the two-level enhancement for obstruction of justice and the denial of a three-level reduction for acceptance of responsibility. Neither claim has merit.

■ *Obstruction enhancement.* Among the circumstances for a two-level upward adjustment for obstruction of justice is committing perjury, or providing materially false information to a judge, during sentencing. U.S.S.G. § 3C1.1 & cmt. n. 4(b), (f). Judge McMahon found that McLeod repeatedly lied at the sentencing hearing in his attempt to disclaim responsibility for the fraudulent returns uncovered in the civil audit. The record fully supports her findings.

■ *Acceptance of responsibility.* A reduction for acceptance of responsibility is generally unavailable to a defendant "who falsely denies, or frivolously contests, relevant conduct that the court determines to be true." *Id.* § 3E1.1, cmt. n. 1(a). Moreover, the reduction is unavailable, absent "'extraordinary circumstances,'" to a defendant properly found to merit an obstruction-of-justice enhancement. *United*

*States v. Champion*, 234 F.3d 106, 110 (2d Cir.2000) (quoting U.S.S.G. § 3E1.1, cmt. n. 4). The reduction was properly denied to McLeod.

## III. Consecutive Sentences

■ Misunderstanding the Guidelines' provisions concerning consecutive sentences, McLeod contends that section 5G1.2(c) of the Sentencing Guidelines required the sentencing judge to impose concurrent sentences, up to the statutory three-year maximum, on all five counts. However, section 5G1.2(c) is not applicable; that provision requires concurrent sentences only if "the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment." U.S.S.G. § 5G1.2(c). The relevant provision is section 5G1.2(d), which requires consecutiveness, although not precisely in the manner sought to be accomplished by the District Court.

■■ The correct method of imposing sentences on multiple counts has three steps:

(1) The sentencing judge determines the "total punishment" to be imposed by selecting an appropriate punishment within the range resulting from application of all relevant provisions of the Guidelines. U.S.S.G. § 5G1.2(b).

(2) The sentencing judge imposes the "total punishment" *on each count,* unless the "total punishment" would exceed the statutory maximum for any one count, *id.,* in which event the statutory maximum is imposed on that count, *id.* § 5G1.1(a).

(3) The sentencing judge compares the "total punishment" to the highest statutory maximum of all the counts of which the defendant has been convicted, *id.* § 5G1.2(c)-(d), and determines whether the sentences run concurrently or consecutively based on the comparison:

(a) If the "total punishment" is less than that highest maximum, the sentences on all counts are imposed to run concurrently, *id.* § 5G1.2(c), unless some applicable provision of law requires consecutiveness, *see, e.g.,* 18 U.S.C. § 924(c) (mandatory minimum sentences for certain firearms offenses run consecutively with all other sentences).

(b) If the "total punishment" is more than that highest maximum, the sentences are imposed to run consecutively but only to the extent necessary to produce an aggregate sentence equal to the "total punishment." *Id.* § 5G1.2(d); *see United States v. Rahman,* 189 F.3d 88, 155 (2d Cir.1999).

■ In McLeod's case, Judge McMahon determined that the "total punishment" should be 121 months. That punishment could not have been imposed on all five counts because the statutory maximum for each count is 36 months. The correct sentence, required by the Guidelines, was imposition of 36 months on each of the five counts. After imposing these five sentences, the sentencing judge should then have run them consecutively to the extent necessary to achieve an aggregate sentence of 121 months. For example, the sentences on Counts 1, 2, and 3 could have been imposed to run consecutively (thereby achieving 108 months toward the 121–month total); 13 months of the 36–month sentence on Count 4 could have been imposed to run consecutively to the sentences on Counts 1, 2, and 3 (thereby achieving the 121 month total); the remaining 23 months of the 36–month sentence on Count 4 would then be imposed to run concurrently; and the 36–month sentence on Count 5 would then be imposed to

run concurrently.[2] The selection of the counts on which sentences should run consecutively (in whole or in part) to reach the "total punishment" is for the sentencing judge. In the pending case, however, because the counts are "fungible" for purposes of sentencing modification, *see United States v. Gelb*, 944 F.2d 52, 60 (2d Cir.1991) (tax counts), and because the proper technique for accomplishing consecutiveness will not change the aggregate sentence that has been imposed, we will not require a remand and instead will modify the judgment, *see* 28 U.S.C. § 2106, so that the sentences on the five counts conform to the Guidelines.

## Conclusion

The judgment is modified to provide that the sentence on each of Counts 1, 2, 3, 4, and 5 is 36 months; the sentences on Counts 1, 2, and 3 and 13 months of the sentence on Count 4 run consecutively for an aggregate sentence of 121 months; the remaining 23 months of the sentence on Count 4 and the entire sentence on Count 5 run concurrently to the sentences on all the other counts. As modified, the judgment is affirmed.

2. We have found no guidance as to whether a sentence to be imposed concurrently should be specified as running concurrently with the sentence on a particular count, as running concurrently with the sentences on all the other counts, or simply as running concurrently, without further specification. However er specified, the defendant serves the concurrent sentence (or concurrent portion of it) each day that he is a sentenced prisoner. In the pending case, the concurrent portion of the sentence on Count 4 and all of the concurrent sentence on Count 5 will run concurrently with the sentences on all the other counts.