**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No.  01-60356

UNITED STATES OF AMERICA,                                                    Plaintiff - Appellee,

versus

DERWIN RENWICK MCWAINE, also known as Skibow,

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

April 24, 2002

Before EMILIO M. GARZA, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Derwin Renwick McWaine ("McWaine") challenges the sentence imposed upon him for various drug trafficking, firearms, and money laundering offenses.  We hereby AFFIRM McWaine's sentence with a MODIFIED term of supervised release.

FACTUAL AND PROCEDURAL HISTORY

1

McWaine was convicted after a jury trial of Counts 1-4, 7-12, and 14-15 of a 15-count indictment for violating federal drug, gun, and money laundering statutes. The district court sentenced McWaine to life imprisonment on Count 1, which charged conspiracy to distribute cocaine base; 60 months on Count 2, which charged possession with intent to distribute marijuana; 120 months on Count 3, which charged possession of a gun as a felon; 60 months on Count 4, which charged possession of a gun with an obliterated serial number; and 240 months each on Counts 7-12 and 14-15, which charged money laundering. All sentences were ordered to run concurrently.

This Court affirmed McWaine's conviction based upon "overwhelming evidence" but vacated his sentence and remanded his case to the district court for re-sentencing in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). United States v. McWaine, 243 F.3d 871, 874, 875-86 (5th Cir. 2001). Specifically, this Court concluded that McWaine's life imprisonment term violated Apprendi because the quantity of drugs with respect to Count 1 had not been alleged in the indictment or proven to the jury beyond a reasonable doubt, and thus, McWaine could not be sentenced on Count 1 to more than the twenty year statutory maximum provided by 21 U.S.C. § 841(b)(1)(C) (2001). Id. at 875.

The Presentence Investigation Report ("PSR"), unchanged on remand, made the following recommendations. With respect to Counts 1 and 2 (the drug- related counts), the PSR found that based upon all of the evidence and the testimony at trial, McWaine was responsible for distributing approximately 100 kilograms of crack cocaine and for possessing approximately seven pounds of marijuana. The PSR recommended grouping Counts 1 and 2 pursuant to § 3D1.2(d). See U.S. SENTENCING GUIDELINES MANUAL§ 3D1.2(d) (1997) ("Sentencing Guidelines" or "U.S.S.G."). Based upon the aforementioned drug quantities, the PSR calculated the base offense level for these counts under U.S.S.G. §§ 2D1.1(a)(3) and (c)(1) as 38. Added to this offense level were two points

for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), four points for having a leadership role in criminal activity that involved five or more participants under U.S.S.G. § 3B1.1(a), and two points for obstruction of justice under U.S.S.G. § 3C1.1. The adjusted offense level was therefore 46.

Counts 3 and 4 (the gun-related counts) were grouped together under U.S.S.G. § 3D1.2(d), and the base offense level was calculated at 20 under U.S.S.G. § 2K2.1(a)(4) because McWaine had one prior felony conviction of a crime of violence. Added to the offense level was one point under U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three or more firearms, two points under § 2K2.1(b)(4) because the serial number on one of the firearms had been obliterated, and four points under § 2K2.1(b)(5) because a firearm had been possessed in connection with another felony offense. The adjusted base offense level for Counts 3 and 4 was therefore 27. However, U.S.S.G. § 2K2.1(c)(1)(A) directs the application of § 2X1.1 (Attempt, Solicitation, or Conspiracy), which defines its base offense level as the base offense level from the guideline for the substantive offense, plus adjustments for any intended offense conduct that can be established with reasonable certainty. The PSR thus looked to the base offense level plus adjustments for Counts 1 and 2, which was 40 (38 plus two points for a specific offense characteristic). Because the offense level plus adjustments of Counts 1 and 2 equaled 40, which was more than the adjusted base offense level of 27 for Counts 3 and 4, the PSR applied 40 as the adjusted base offense level for Counts 3 and 4. The PSR then added four points for having a leadership role under U.S.S.G. § 3B1.1(a) and two points for obstruction of justice under § 3C1.1. The adjusted offense level was therefore 46.

Counts 7-12 and 14-15 (the money laundering counts) were grouped together pursuant to U.S.S.G. § 3D1.2(d), and the base offense level was calculated at 23 under § 2S1.1(a)(1) (the

3

guideline for an 18 U.S.C. § 1956(a)(1)(A)(i) (2000) offense (laundering of monetary instruments)). The PSR added three points under U.S.S.G. § 2S1.1(b)(1) because McWaine knew the funds were the proceeds from an unlawful activity, four points under § 3B1.1(a) for having a leadership role in the criminal activity, and two points under § 3C1.1 for obstruction of justice. The adjusted offense level was therefore 32.

The PSR recommended grouping Counts 1 and 2 with Counts 3 and 4 because pursuant to the cross-reference provision of U.S.S.G. § 2K2.1(c)(1)(A), the adjusted base offense level for Counts 3 and 4 was determined under § 2D1.1. The PSR therefore concluded that Counts 1-4 involved the same victim and the same act or transaction as required in U.S.S.G. § 3D1.2(a). The PSR then recommended grouping Counts 1-4 with Counts 7-12 and 14-15 because the societal interests underlying the drug distribution and the money laundering involved the same victim as required in U.S.S.G. § 3D1.2(b). As all counts were grouped under U.S.S.G. § 3D1.2(a)-(c), § 3D1.3(a) provided that the combined adjusted offense level be determined by the most serious of the counts comprising the group, i.e., the highest level of the counts in the group. The PSR thus recommended using the adjusted offense level of 46 for Counts 1-2 and/or Counts 3-4 for the combined adjusted offense level. The total offense level was also determined to be 46. McWaine received thirteen criminal history points, which placed him in a criminal history category of VI. The range suggested by the guidelines was life imprisonment. See U.S.S.G. Ch. 5, Pt. A (sentencing table).

The district court, after considering the sentencing memoranda filed by the parties, sentenced McWaine to twenty years on Count 1, the statutory maximum provided by § 841(b)(1)(C), and five years on Count 2, the statutory maximum provided by § 841(b)(1)(D). Counts 1 and 2 were ordered

4

to run concurrently. McWaine was sentenced to ten years on Count 3, the statutory maximum provided by 18 U.S.C. § 924(a)(2) (2000), and a concurrent five years on Count 4, the statutory maximum provided by § 924(a)(1)(B). McWaine was sentenced to twenty years on each of Counts 7-12 and 14-15, the statutory maximum provided by 18 U.S.C. § 1956(a)(1)(A)(I), with all counts to run concurrently. The sentences of twenty, ten, and twenty years' imprisonment were ordered to run consecutively for a total of fifty years of imprisonment. Consecutive sentencing was ordered because pursuant to U.S.S.G.§ 5G1.2 (sentencing on multiple counts of conviction), if the sentence carrying the highest statutory maximum (here, twenty years) is less than the total punishment (here, life imprisonment as suggested by the guidelines), then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. McWaine was also sentenced to a concurrent term of five years' supervised release and ordered to pay a $900 assessment.

The district court concluded that Apprendi did not apply to the guideline computation and overruled McWaine's objections to the PSR's finding of the quantity of drugs for purposes of the guidelines computation and his objections to the PSR's calculations related to the gun counts. McWaine appealed.

DISCUSSION

McWaine argues on appeal that the district court erred in applying U.S.S.G. § 2D1.1(c)(1) and U.S.S.G. § 5G1.2(d) to determine his sentence. He also argues that the PSR erred in enhancing his offense level for the gun counts based upon a finding that he possessed three, as opposed to two, guns in connection with his criminal activities, that he had a leadership role with respect to the gun-

5

related counts, and that he obstructed justice with respect to the gun-related counts.[1]

I.      Application of the Drug Quantity Table

McWaine argues that when Apprendi changes "the predicate statute under which the defendant is convicted, the guidelines computation is likewise changed."  Specifically, he argues that the district court erred in determining his base offense level for Count 1 as 38 under U.S.S.G. § 2D1.1(c)(1).  The base offense level was determined under this subsection because the PSR found McWaine responsible for 100 kilograms of cocaine base and approximately seven and one-half pounds of marijuana.  See U.S.S.G. § 2D1.1(c)(1).  McWaine argues that Application Note 10 and the background information to U.S.S.G. § 2D1.1 make clear that the different subsections of § 2D1.1(c) (providing base offense levels for differing drug quantities) correlate to the different drug quantity levels provided for in § 841(b)(1)(A)-(C).[2]  He thus maintains that the district court only had the discretion to determine the base offense level for Count 1 within the range allowed by U.S.S.G. § 2D1.1(c)(8)-(14) (providing base offense levels from 12 to 24) and, therefore, the highest base offense level he could have received for Count 1 was 24, which provides a sentencing range of 100-125 months (with a criminal history category of VI), much less than the actual sentence imposed.  He further contends that it is unconstitutional to allow the district court to determine his base offense level under § 2D1.1(c)(1) because that subsection is only applicable when the defendant is convicted under § 841(b)(1)(A).  He asserts that the only rational basis for applying U.S.S.G. § 2D1.1(c)(1) to

---

[1]  McWaine also argues that the principles announced in McMillan v. Pennsylvania, 477 U.S. 79 (1986), do not survive Apprendi.  This argument is foreclosed by Apprendi, which expressly limits its holding so as to not overrule McMillan.  Apprendi, 530 U.S. at 487 n.13.

[2]  Application Note 10 to U.S.S.G. § 2D1.1 provides: "The Commission has used the sentences provided in, and equivalencies derived from, the statute (21 U.S.C. § 841(b)(1)), as the primary basis for the guideline sentences."  The Background to § 2D1.1 states that "[t]he base offense levels for § 2D1.1 are either provided directly by the Anti-Drug Abuse Act of 1986 or are proportional to the levels established by statute, and apply to all unlawful trafficking."

6

convictions under § 841(b)(1)(C) is the evasion of <u>Apprendi</u>, which is not a legitimate purpose.

This Court reviews the legal meaning of the guidelines *de novo* and factual findings for clear error. <u>United States v. Dixon</u>, 132 F.3d 192, 201 (5th Cir. 1997). We have not explicitly addressed McWaine's argument that the drug quantities provided by subsections U.S.S.G. § 2D1.1(c) correspond to the drug quantities provided by subsections § 841(b)(1)(A)-(C). However, we have applied <u>Apprendi</u> to the sentencing scheme for drug convictions under 21 U.S.C. ' 841(b). <u>United States v. Doggett</u>, 230 F.3d 160, 164-65 (5th Cir. 2000). In <u>Doggett</u>, we held "that if the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. ' 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt." <u>Id.</u> Additionally, we held that <u>Apprendi</u> only applies when the defendant is sentenced above the statutory maximum and that <u>Apprendi</u> has no effect on the district court's determination of drug quantity under U.S.S.G. § 2D1.1(c). <u>Id.</u> at 165-66. In <u>Doggett</u>, the jury made no finding concerning drug quantity for the charged drug counts, and thus, Doggett could only be sentenced to a maximum of twenty years under § 841(b)(1)(C).[3] <u>Id.</u> at 165. Doggett's sentence of 235 months was not beyond the statutory maximum. <u>Id</u>. The district court determined Doggett's base offense level with reference to his "relevant conduct" by aggregating all of the drug quantities manufactured, distributed, or possessed by Doggett or his co-conspirators. <u>See</u> U.S.S.G. § 1B1.3(a)(1). His base offense level was found to be 34 under U.S.S.G. § 2D1.1(c)(3).

We rejected Doggett's argument that <u>Apprendi</u> prohibited the trial court from determining the amount of drugs for relevant conduct purposes under the guidelines. This Court noted that

---

[3] Section 841(b)(1)(C) sets the statutory maximum for an offense involving an unspecified amount of a cocaine, a Schedule II substance, at twenty years in prison. 21 U.S.C. § 812, Schedule II(4) (1999).

7

Apprendi was limited to facts which increase the penalty beyond the statutory maximum and "does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines." Doggett, 230 F.3d at 166. We further explained that Apprendi did not affect the Supreme Court's holding in Edwards v. United States, 523 U.S. 511 (1998), "that the judge determines the kinds and amounts of the controlled substances when imposing sentences within the statutory range." Id. Based upon Doggett, we find no error in the district court's application of U.S.S.G. § 2D1.1(c)(1) to determine the base offense level for Count 1 because McWaine was not sentenced in excess of twenty years under § 841(b)(1)(C). Id. at 165-66 (stating that even if a drug amount is not alleged in the indictment, Apprendi does not apply where the sentence is less than the statutory maximum provided by 21 U.S.C. ' 841(b)(1)(C)); see also United States v. Keith, 230 F.3d 784, 787 (5th Cir. 2000).[4]

## II.    Consecutive Sentencing Under U.S.S.G. § 5G1.2(d)

McWaine raises several arguments challenging the district court's use of U.S.S.G. § 5G1.2(d) to order consecutive sentencing.[5] The thrust of these arguments is that the district court's use of

---

[4] As part of his § 2D1.1 discussion, McWaine also avers that "[t]he [d]istrict [c]ourt's grouping analysis runs directly counter to the multi-count sentencing and punishment policies of the Sentencing Guidelines." To support this argument, he notes that all of his offenses involved substantially the same harm, that there is no increase in penalty for offenses involving substantially the same harm, that even if his offenses did not involve substantially the same harm, his offense level would not be increased by more than five offense levels under § 3D1.4, and that the Sentencing Guidelines do not approve the "'guns/money-laundering/drugs' grouping for consecutive sentencing."

McWaine's argument appears to be that the district court's consecutive sentence resulted in a sentence that exceeded what was intended by the guidelines. He cites U.S.S.G. § 3D1.4 in support of his argument. The Application Note 1 to § 3D1.4 states that when, as in this case, §§ 3D1.2 and 3D1.3 produce a *single* group of closely related counts, the combined offense level is determined in accordance with § 3D1.3. McWaine's counts were grouped into one single group. We can find no error in this grouping nor does McWaine argue that it was error to group the counts. Section 3D1.4, therefore, which determines the combined offense level for different groups of counts, has no application to McWaine's sentence.

[5] Section 5G1.2(d) provides that:
    If the sentence imposed on the count carrying the highest statutory maximum is less than the total

8

U.S.S.G. § 5G1.2(d) violated Apprendi because running McWaine's sentences consecutively, rather than concurrently, effectively increased the penalty to which he was subject based solely on facts determined by the district court judge and not charged to the jury.[6]

Under 18 U.S.C. § 3584(a) (2000), if multiple terms of imprisonment are imposed on a defendant at the same time, the terms may run concurrently or consecutively. In determining whether to run sentences consecutively or concurrently, the district court should consider the factors set forth in § 3553(a), which include the nature and circumstances of the offense, the seriousness of the offense, and the need to protect the public. § 3584(b) (directing the court to consider the factors set forth in § 3553(a)). Pursuant to 28 U.S.C. § 994(a)(1)(D) (1993), the sentencing guidelines should be used to make "a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively."

Under U.S.S.G. § 5G1.2(d) (sentencing on multiple counts of conviction), if the sentence carrying the highest statutory maximum is less than the "total punishment," then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. The "total punishment" is determined by the adjusted combined offense level. U.S.S.G. § 5G1.2, cmt. In this case, the district court ordered consecutive sentencing because the highest statutory maximum of twenty years was less than the total punishment of life imprisonment recommended by the guidelines. Thus, the district court's

---

punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

[6] Apprendi "does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines." Doggett, 230 F.3d at 166. Therefore, part of McWaine's argument has already been rejected by this Court.

order of consecutive sentencing did not violate the provisions of 18 U.S.C. §§ 3584, 3553; 28 U.S.C. § 994; or U.S.S.G. § 5G1.2.

In Apprendi, the government argued that, even without the sentencing error, the judge could have imposed consecutive sentences on two counts that would have produced the twelve year term of imprisonment that Apprendi received. 530 U.S. at 474. The Supreme Court rejected this argument, stating that the constitutional question was "whether the 12-year sentence imposed on Count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count." Id. The Supreme Court further stated that "[t]he sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining 18 counts." Id. Accordingly, although not explicitly, the Supreme Court found the issue of consecutive sentencing irrelevant to its determination of whether the sentencing court had impermissibly exceeded the statutory maximum for the particular count in question. However, we have not specifically considered whether Apprendi prohibits the district court from stacking multiple counts pursuant to U.S.S.G. § 5G1.2(d). In United States v. Vasquez-Zamora, this Court *sua sponte* recognized that the defendant's sentence violated Apprendi because the government failed to state a drug quantity in the indictment and to prove it beyond a reasonable doubt to a jury. 253 F.3d 211, 214 (5th Cir. 2001). The government argued that any error was harmless because the district court could have imposed consecutive rather than concurrent sentences under U.S.S.G. § 5G1.2(d). Id. We concluded that because "the district court has discretion under the applicable statutes and sentencing guidelines to fashion a penalty that combines terms of imprisonment with periods of supervised release," it was appropriate to vacate the defendant's prison term and remand it for re-sentencing. Id.; but see United States v. Sturgis, 238 F.3d 956, 960-61 (8th Cir. 2001) (holding that the court did not commit plain error because, absent

10

sentencing error, U.S.S.G. § 5G1.2(d) would have been imposed and sentence would have been the same).  Vasquez- Zamora is distinguishable from the instant case, however, because in this case, the district court exercised its discretion to impose consecutive sentences.

The Second Circuit has repeatedly held that Apprendi poses no obstacle to guideline calculations that do not result in a sentence exceeding the statutory maximum on any single count.  E.g., United States v. McLeod, 251 F.3d 78, 82 (2d Cir. 2001).  This is true even when the total punishment exceeds the highest statutory maximum on any particular count.  Id.  Further, the Second Circuit has held that the preponderance of the evidence standard applies to determinations of relevant conduct for purposes of ascertaining the total punishment.  Id.  The Second Circuit has also opined that "the Supreme Court's concern in Apprendi was whether the sentencing court had, on the basis of facts found by the court and not the jury, exceeded the sentence for a particular count."  United States v. White, 240 F.3d 127, 135 (2d Cir. 2001).  Additionally, the Second Circuit stated that it was aware of no constitutionally cognizable right to concurrent, rather than consecutive, sentences.  Id.[7]

In another opinion, the Second Circuit explained the Apprendi Court's rejection of the government's argument that the challenged sentence should be upheld because the same total punishment could have been imposed if the sentences were consecutive.  United States v. Feola, 275 F.3d 216, 220 n.1 (2d Cir. 2001).  The Second Circuit made clear that "the vice in Apprendi was the imposition of a sentence on a single count (Count 18) in excess of the statutory maximum for that count. [However, in Feola,] the appellant's sentences on each count is within the statutory maximum for that count.  The consecutive sentence analogy from White therefore encounters no obstacle under

---

[7]   Although in another context, this Court has recognized that there is no constitutional right to concurrent sentences.  United States v. Dovalina, 711 F.2d 737, 739 (5th Cir. 1983).

11

Apprendi." Id.

We adopt the reasoning of the Second Circuit and conclude that Apprendi does not prohibit consecutive sentences such as the one at issue in this case.

III.     Gun-Related Counts

McWaine argues that the district court erred in calculating his offense level for the gun-related counts because (1) there was no evidence that he possessed three guns, as opposed to two, in connection with his criminal activities, (2) there was no evidence that he supervised others with respect to the gun charges, and (3) there was no evidence that he obstructed justice with respect to the gun charges. Because we approve of the PSR's calculation of the combined adjusted offense level, which was based upon the adjusted offense level of Counts 1 and 2 *and/or* Counts 3 and 4, resolution of these issues is unnecessary.

IV.     Supervised Release

This Court has determined that a defendant with no prior felony drug conviction is "required to receive a supervised release term of not less than nor more than three years." See United States v. Kelly, 974 F.2d 22, 24 (5th Cir. 1992). "However, if a defendant does have a prior felony drug conviction that has become final, ' 841(b)(1)(C) provides that the court must 'impose a term of supervised release of at least 6 years in addition to such term of imprisonment.' " United States v. Cooper, 274 F.3d 230, 244 (5th Cir. 2001) (interpreting ' 3583(b)(2) and ' 841(b)(1)(C)). The government concedes that McWaine does not have a prior felony drug conviction.

Although McWaine does not raise this issue, we have the discretion to *sua sponte* modify the term. We have raised *sua sponte* Apprendi issues in other cases when necessary to avoid manifest

12

injustice.  See e.g., United States v. Garcia, 242 F.3d 593, 599 (5th Cir. 2001).[8]  This Court has modified terms of supervised release that exceeded the statutory maximum without remanding for re-sentencing.  See Doggett, 230 F.3d at 165 n.2.  Accordingly, this Court hereby modifies the district court's sentence of five years' supervised release for Count 1 to three years.

CONCLUSION

For the reasons stated herein, McWaine's sentence is AFFIRMED and his term of supervised release is AFFIRMED AS MODIFIED.

AFFIRMED in part and AFFIRMED AS MODIFIED in part.

---

[8] "Although an argument not raised on appeal is ordinarily deemed abandoned or waived, the Court may consider it on its own accord when manifest injustice would otherwise occur."  Garcia, 242 F.3d at 599 n.5.  As in Garcia, we find that it would be manifestly unjust "to ignore the clear-cut, mechanical application of Apprendi to [McWaine's] prison sentence simply because [he] did not ask for all the relief to which he was entitled."  Id.